1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   BRIAN M. DAUCHER, Cal. Bar No. 174212
3  GAZAL POUR-MOEZZI, Cal. Bar No. 285932
   650 Town Center Drive, 10th Floor
4  Costa Mesa, California 92626-1993
   Telephone:  714.513.5100
5  Facsimile:  714.513.5130

6  Attorneys for Plaintiff
   VITALYTE SPORTS NUTRITION INC.

7

8                    UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11

12  VITALYTE SPORTS NUTRITION        Case No.  '21CV0880 JLS  BGS
    INC., a Nevada corporation,
13                                   COMPLAINT FOR:
              Plaintiff,
14                                      1. TRADEMARK
        v.                                 INFRINGEMENT [15 U.S.C. §
15                                         1114(1)];
    REVITALYTE LLC, a Minnesota
16  limited liability company; and DOES 1-   2. UNFAIR COMPETITION &
    10, inclusive,                          FALSE DESIGNATION OF
17                                          ORIGIN [15 U.S.C. § 1125(a)];
              Defendants.
18                                      3. CANCELLATION OF
                                           FEDERAL TRADEMARK
19                                         REGISTRATION [15 U.S.C. §
                                           1064 and 1119]; and
20
                                     DEMAND FOR JURY TRIAL
21

22

23

24

25

26

27

28

-1-

1       Vitalyte Sports Nutrition Inc. for its Complaint against Revitalyte LLC

2   ("Revitalyte") and Does 1-10 (collectively, "Defendants"), alleges as follows:

3   **THE PARTIES**

4       1.      Vitalyte Sports Nutrition Inc. ("Vitalyte") is a Nevada corporation with

5   its principal place of business at 540 S. Andreasen Dr. Ste H & I, Escondido,

6   California 92029.

7       2.      On information and belief, Revitalyte LLC ("Revitalyte") is a

8   Minnesota limited liability company with its principal place of business at 3344

9   France Avenue South, St. Louis Park, Minnesota 55416.

10      3.      Vitalyte is unaware at this time of the true names and capacities of

11  defendants sued herein as Does 1 through 10, inclusive, and therefore sues these

12  defendants by these fictitious names.  Vitalyte will seek leave of the Court to amend

13  this Complaint to allege their true names and capacities when the same have been

14  ascertained, or, at the time of trial.

15      4.      On information and belief, at all times herein mentioned, each of the

16  Defendants was the agent, servant, or employee of each of the other Defendants, and

17  in doing the things alleged in this Complaint, was acting in the course and scope of

18  such agency, service, and employment, and with the permission and consent of his,

19  her or its co-Defendants.

20  **NATURE AND STATUTORY BASIS OF THE ACTION**

21      5.      This action seeks remedy for federal trademark infringement, and

22  unfair competition and false designation of origin, in violation of the Lanham Act,

23  15 U.S.C. sect. 1051, *et seq.*; and cancellation of a federal trademark registration

24  under the Lanham Act, 15 U.S.C. §§ 1064 and 1119.

25  **JURISDICTION AND VENUE**

26      6.      This Court has personal jurisdiction over Defendants because, on

27  information and belief: (i) Defendants do business and/or actively solicit business in

28  California, including via advertising and offering products under the mark

-2-

1   **REVITALYTE** throughout California and within this judicial district; (ii)

2   Defendants have continuous and ongoing business contacts with residents of

3   California, including via advertising and offering products under the mark

4   **REVITALYTE**; (iii) Defendants have intentionally engaged in acts of trademark

5   infringement and unfair competition with knowledge of Vitalyte's senior trademark

6   rights targeted at Vitalyte which is located in California, and that have thus caused

7   harm within California; and/or (iv) Defendants have purposely availed themselves

8   of the privilege of conducting business in California.  For example, on information

9   and belief, Revitalyte advertises and sells its products nationwide through its

10  website located at www.drinkrevitalyte.com.  Additionally, on information and

11  belief, Revitalyte sells its products through various retailers located throughout

12  California, including dozens of retailers located within this judicial district, as

13  evidenced by the "Find" page on Revitalyte's website, located at

14  www.drinkrevitalyte.com/find.

15         7.      This Court has subject-matter jurisdiction over this action pursuant to

16  15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) as this action is based on the federal

17  Lanham Act.

18         8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§

19  1391(b) and (c) in that, on information and belief, Defendants conduct business in

20  this district, and a substantial part of the acts or omissions giving rise to the claims

21  asserted herein occurred and/or had effects in this district.

**FACTUAL BACKGROUND**

22

23  **A.      Vitalyte's History, Business and Valuable Intellectual Property**

24         9.      Vitalyte was founded over forty years ago by Bill Gookin with the

25  mission to provide a healthy alternative to high-sugar, high-sodium sports drinks

26  that were on the market.  Gookin, a biochemist, achieved this goal by formulating an

27  innovative electrolyte replacement and energy drink mix, originally marketed under

28  the name GOOKINAID.  In 2008, the company changed its name and its product

-3-

name to the distinctive and federally registered **VITALYTE**® (the "**VITALYTE**

Mark" or "Mark").

10.     Vitalyte has commercially used its distinctive Mark in connection with

its electrolyte replacement and sports energy mixes since at least as early as 2008,

and offers its products under the Mark throughout the world, with the United States

comprising its largest market.

11.     The **VITALYTE** Mark is strong and distinctive when used in

connection with Vitalyte's products.  As a result of Vitalyte's exclusive and

substantial use of the **VITALYTE** Mark, the Mark has come to distinguish

Vitalyte's products from those offered by others.

12.     As a company that depends both upon the quality of its products, and

the reliability of its brand, Vitalyte has spent substantial sums securing and

protecting its intellectual property interests in the Mark.

13.     Among other efforts, Vitalyte has obtained a federal trademark

registration to protect the value of the Mark in connection with its electrolyte

replacement and sports energy mixes.  *See* U.S. Reg. No. 4,758,351, attached hereto

as Exhibit A (the "**VITALYTE** Registration").

14.     The **VITALYTE** Registration constitutes prima facie evidence that the

Mark is valid and that Vitalyte is entitled to the exclusive use of the Mark in

commerce throughout the United States on the goods listed on the registration,

including sports energy mixes.

15.     Since its first use of the Mark, Vitalyte has spent substantial sums to

advertise and promote the **VITALYTE** Mark.  For instance, Vitalyte prominently

displays the Mark and provides information about its products on the Internet via its

website located at *www.vitalyte.com*, as well as via its social media accounts on

Facebook, Instagram, LinkedIn, and Twitter.

16.     Since adopting the Mark, Vitalyte has expended substantial amounts of

time, effort and money to ensure that the relevant public associates the **VITALYTE**

SMRH:4820-8299-7479.1                                    COMPLAINT FOR TRADEMARK INFRINGEMENT

1   Mark with its products.  As a result of this time, effort and money invested, Vitalyte
2   and the **VITALYTE** Mark have achieved a reputation for excellence in the
3   marketplace.

4         17.   Vitalyte enjoys substantial demand and goodwill for its products
5   marketed and offered under the **VITALYTE** Mark.  Accordingly, the Mark is a
6   significant asset of Vitalyte's business.

7         18.   By virtue of Vitalyte's use of the **VITALYTE** Mark and the sums
8   spent to promote the Mark, the **VITALYTE** Mark has acquired secondary meaning
9   in the minds of the relevant public.  The relevant public has come to associate the
10   Mark with the electrolyte replacement and sports energy mixes that originate from
11   Vitalyte.  Accordingly, Vitalyte has extensive common law, as well as registered,
12   rights in the **VITALYTE** Mark.

13   **B.   Defendants' Business and Unlawful Conduct**

14         19.   Defendants offer competing, and/or at minimum, related electrolyte
15   replacement and energy beverages under a mark that is confusingly similar to the
16   **VITALYTE** Mark, specifically, **REVITALYTE**.

17         20.   Defendants' infringing mark **REVITALYTE** is substantially and
18   confusingly similar in sight, sound and meaning to the **VITALYTE** Mark.

19         21.   Defendants also purport to own a federal trademark registration for the
20   **REVITALYTE** mark (Reg. No. 5,932,402) (the "**REVITALYTE** Registration").
21   The **REVITALYTE** Registration covers the following goods: "electrolyte
22   replacement solutions," and claims a first use date of March 2018, approximately
23   *ten* years after Vitalyte's first use of the Mark for its electrolyte replacement and
24   sports energy mixes.  Hence, Vitalyte enjoys substantial senior trademark rights to
25   those of Revitalyte.

26         22.   Defendants have never been authorized by Vitalyte to use the
27   **REVITALYTE** mark or any other mark confusingly similar to the **VITALYTE**

28

-5-

1   Mark, and have never been granted authority to assert or suggest any affiliation with

2   or endorsement by Vitalyte.

3        23.    On information and belief, Defendants advertise and market their

4   competing goods under the **REVITALYTE** mark through a variety of marketing

5   channels that overlap with Vitalyte's marketing channels, including via the Internet

6   and various social media platforms such as Facebook, Instagram and Twitter.

7        24.    On information and belief, Defendants willfully adopted the

8   **REVITALYTE** mark with clear knowledge of the **VITALYTE** Mark and with

9   knowledge that Vitalyte uses the Mark in connection with similar electrolyte

10   replacement and sports energy mixes.  Ryan Leonard, who, on information and

11   belief, serves as the managing member and founder of Revitalyte, formerly worked

12   for ChemSol, LLC, one of Vitalyte's longtime vendors.  Vitalyte sourced all of its

13   ingredients for its drink mixes (except flavors and colors) from ChemSol from

14   approximately 2010 to 2016. During that time, Mr. Leonard served as the ChemSol

15   representative that serviced Vitalyte's account.  Mr. Leonard was therefore very

16   well aware of the **VITALYTE** Mark, as well as Vitalyte's business, prior to starting

17   his competing Revitalyte business in 2018.

18        25.    Hence, on information and belief, Defendants adopted the

19   **REVITALYTE** mark with an intent to trade on the substantial goodwill and

20   demand associated with Vitalyte and its Mark.  On information and belief,

21   Defendants were well aware of the **VITALYTE** Mark before they commenced

22   using the confusingly similar **REVITALYTE** mark and/or filed a federal trademark

23   application for the **REVITALYTE** mark.

24        26.    As a result of Defendants' use of a confusingly similar mark for related

25   and competing goods, consumers who encounter the **REVITALYTE** mark in

26   connection with Defendants' electrolyte replacement and sports energy drinks are

27   likely to be confused as to the source of Defendants' goods, or as to their connection

28

1   to or affiliation with Vitalyte and its similar products offered under the **VITALYTE**

2   Mark.

3        27.    Vitalyte first learned of Defendants' use of the **REVITALYTE** mark

4   in or around mid 2018.  Accordingly, Vitalyte sent a cease and desist letter to

5   defendant Revitalyte alerting it of Vitalyte's senior trademark rights, Mr. Leonard's

6   former affiliation and clear knowledge of Vitalyte, and of its violations of the

7   Lanham Act as a result of its adoption and use of the **REVITALYTE** mark.

8   Vitalyte demanded that Revitalyte immediately cease and desist from further use of

9   the **REVITALYTE** mark.  Revitalyte refused to cease use of the **REVITALYTE**

10  mark, contending instead that the parties' marks and products were sufficiently

11  distinct, in part because Defendants were not focused on the sports market by rather

12  merely on therapeutic electrolyte replacement, akin to **PEDIALYTE**.

13       28.    Vitalyte disagreed with Revitalyte's assertions, reserved all rights, and

14  continued to monitor Revitalyte's use of the **REVITALYTE** mark.  Recently, it

15  appears that Revitalyte has expanded its **REVITALYTE** product line and marketing

16  efforts, and now offers an electrolyte replacement and sports energy beverage that

17  contains 33% more electrolytes and less sugar, a formula that even more closely

18  resembles Vitalyte's well-known electrolyte and energy mixes.  Revitalyte's new

19  product is also co-branded by Barstool Sports, which, on information and belief, is a

20  digital media company that produces sports content, thereby further evidencing

21  Revitalyte's intentional expansion into the sports beverage market.

22       29.    Hence, in light of Defendants' recent expansion of the **REVITALYTE**

23  product line, Vitalyte is concerned that consumer confusion is even more likely.  To

24  date, Defendants have not ceased use of the **REVITALYTE** mark in connection

25  with their competing and/or related products. Defendants' continued use of the

26  **REVITALYTE** mark in commerce violates Vitalyte's valuable intellectual property

27  rights in the **VITALYTE** Mark, and Defendants' willful infringement is damaging

28  to Vitalyte.

SMRH:4820-8299-7479.1                    COMPLAINT FOR TRADEMARK INFRINGEMENT

1

**FIRST CLAIM FOR RELIEF**

2

**Trademark Infringement**

3

**[Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)]**

4

30.    Vitalyte incorporates by reference the allegations set forth above.

5

31.    Vitalyte owns the federally registered **VITALYTE** Mark.  The

6 **VITALYTE** Mark is strong and distinctive and designates Vitalyte as the source of

7 all products advertised, marketed, sold or used in connection with the Mark.

8

32.    Vitalyte is the senior user of the **VITALYTE** Mark as it began use of

9 the Mark in interstate commerce prior to Defendants' first use of their confusingly

10 similar **REVITALYTE** mark.

11

33.    Defendants were aware of the **VITALYTE** Mark prior to adopting

12 and/or using the **REVITALYTE** mark for their related and/or competing goods,

13 including without limitation, by virtue of the fact that for approximately six years,

14 Mr. Leonard, Revitalyte's founder and managing member, served as representative

15 for a vendor to Vitalyte and had supplied certain ingredients for Vitalyte's products.

16 Thus, Defendants' unauthorized use of the **REVITALYTE** mark was and is

17 knowing, intentional and willful.

18

34.    On information and belief, through their use of the confusingly similar

19 **REVITALYTE** mark, Defendants intended to confuse and mislead consumers into

20 believing that Vitalyte somehow authorized, sponsored, approved, licensed or

21 participated in Defendants' use of the **REVITALYTE** mark.

22

35.    In fact, there is no formal connection or association between Vitalyte

23 and Defendants.  Further, Defendants do not have authorization, license or

24 permission from Vitalyte to advertise, market, or sell products under the

25 **REVITALYTE** mark, which is used in connection with electrolyte replacement and

26 energy beverages that directly compete with and/or are related to the products with

27 which the **VITALYTE** Mark has come to be associated.

28

-8-

36.     On information and belief, Defendants' use of the **REVITALYTE** mark will likely cause confusion as to the origin and authenticity of Defendants' products, and will likely cause others to believe that there is a relationship between Vitalyte and Defendants.

37.     As a direct and proximate result of Defendants' wrongful conduct, Vitalyte has been and will continue to be damaged.

38.     Defendants' actions thus constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1).

39.     Vitalyte has no adequate remedy at law.  Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged herein, including the unauthorized use in commerce of the **REVITALYTE** mark, Vitalyte will continue to suffer irreparable harm.  Accordingly, Vitalyte is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of trademark infringement in violation of the Lanham Act.

40.     Pursuant to 15 U.S.C. § 1117(a), Vitalyte is also entitled to recover damages it has sustained and will sustain as a result of Defendants' wrongful conduct, and the gains, profits and advantages that Defendants have obtained as a result of their wrongful conduct.  At present, Vitalyte is unable to ascertain the full extent of its damages, or the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

41.     Defendants' conduct was intentional and, Vitalyte is therefore entitled to an award of treble damages against Defendants pursuant to 15 U.S.C. § 1117(a).

42.     Defendants' willful acts make this an exceptional case under 15 U.S.C. § 1117(a), and thus, Vitalyte is entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Unfair Competition and False Designation of Origin

### [Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)]

43.    Vitalyte incorporates by reference the allegations set forth above.

44.    Vitalyte owns the federally registered **VITALYTE** Mark.  The Mark is strong and distinctive and designates Vitalyte as the source of all products advertised, marketed, sold or used in connection with the Mark.

45.    Vitalyte is the senior user of the **VITALYTE** Mark as it began use of the Mark in interstate commerce prior to Defendants' first use of the **REVITALYTE** mark.

46.    On information and belief, Defendants were aware of the **VITALYTE** Mark prior to adopting and/or using the **REVITALYTE** mark for their competing products, including without limitation, by virtue of the fact that for approximately six years, Mr. Leonard, Revitalyte's founder and managing member, served as a vendor to Vitalyte and had supplied certain ingredients for Vitalyte's products. Thus, Defendants' unauthorized use of the **REVITALYTE** mark was and is knowing, intentional, and willful.

47.    On information and belief, through their use of the confusingly similar **REVITALYTE** mark, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression that Vitalyte somehow authorized, sponsored, approved, licensed or participated in Defendants' use of the confusingly similar **REVITALYTE** mark.

48.    In fact, there is no formal connection or association between Vitalyte and Defendants, nor has Vitalyte authorized, licensed or given permission to Defendants to use the **VITALYTE** Mark or the **REVITALYTE** mark in any manner.

49.    On information and belief, Defendants' use of the **REVITALYTE** mark will likely cause confusion as to the origin and authenticity of Defendants'

-10-

1  goods, and will likely cause others to believe that there is a relationship between

2  Vitalyte and Defendants.

3      50.    As a direct and proximate result of Defendants' wrongful conduct,

4  Vitalyte has been and will continue to be damaged.

5      51.    Defendants actions thus constitute unfair competition and false

6  designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

7      52.    Vitalyte has no adequate remedy at law.  Unless Defendants are

8  preliminarily and permanently enjoined from committing the unlawful acts alleged

9  herein, including the unauthorized use in commerce of the **REVITALYTE** mark,

10 Vitalyte will continue to suffer irreparable harm.  Accordingly, Vitalyte is entitled to

11 injunctive relief pursuant to 15 U.S.C. § 1116 restraining Defendants, their officers,

12 agents and employees, and all persons acting in concert with them, from engaging in

13 any further such acts of unfair competition and false designation of origin in

14 violation of the Lanham Act.

15     53.    Pursuant to 15 U.S.C. § 1117(a), Vitalyte is also entitled to recover

16 damages it has sustained and will sustain as a result of Defendants' wrongful

17 conduct, and the gains, profits and advantages that Defendants have obtained as a

18 result of their wrongful conduct.  At present, Vitalyte is unable to ascertain the full

19 extent of its damages, or the gains, profits and advantages that Defendants have

20 obtained by reason of their wrongful conduct described herein.

21     54.    Defendants' conduct was intentional and, Vitalyte is therefore entitled

22 to an award of treble damages against Defendants pursuant to 15 U.S.C. § 1117(a).

23     55.    Defendants' willful acts make this an exceptional case under 15 U.S.C.

24 § 1117(a), and thus, Vitalyte is entitled to an award of attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

**Cancellation of Federal Trademark Registration No. 5,932,402**

**[15 U.S.C. §§ 1064 and 1119]**

28     56.    Vitalyte incorporates by reference the allegations set forth above.

-11-

1    57.    Vitalyte owns the federally registered **VITALYTE** mark.  The

2  **VITALYTE** mark is strong and distinctive and designates Vitalyte as the source of

3  all products advertised, marketed, sold or used in connection with the Mark.

4    58.    Vitalyte is the senior user of the **VITALYTE**® mark as it began use of

5  the Mark in interstate commerce prior to Defendants' first use of the

6  **REVITALYTE** mark, which is the subject of federal trademark Registration No.

7  5,932,402.

8    59.    As set forth above, Defendants' use of **REVITALYTE** mark, creates a

9  likelihood of confusion with the senior **VITALYTE** mark.  As a result, Vitalyte has

10  been and continues to be harmed by Defendants' **REVITALYTE** trademark

11  registration.

12    60.    Accordingly, Defendant's U.S. Registration No. 5,932,402 for the

13  **REVITALYTE** mark is subject to cancellation pursuant to 15 U.S.C. §§ 1064 and

14  1119.

15                         **<u>PRAYER FOR RELIEF</u>**

16    WHEREFORE, Vitalyte prays for judgment against Defendants as follows:

17    1.    That Defendants be held liable for federal trademark infringement, and

18  unfair competition and false designation of origin in violation of the Lanham Act, 15

19  U.S.C. §§ 1114, and 1125(a);

20    2.    For preliminary and permanent injunctions enjoining Defendants, their

21  agents, employees, representatives, partners, joint ventures, and/or anyone acting on

22  behalf of, or in concert with Defendants from:

23    A.    advertising, marketing or selling any products under the

24  **REVITALYTE** mark, or any colorable imitation(s) of the **VITALYTE** Mark.

25    B.    using in commerce or facilitating the use in commerce of the

26  **REVITALYTE** mark, or any other phrase, term, mark, trade name, logo or design

27  that falsely represents that, or is likely to confuse, mislead, or deceive purchasers,

28  Vitalyte's customers or prospective customers, or members of the public to believe

-12-

1  that products advertised, marketed, sold and/or offered for sale by Defendants

2  originate from Vitalyte, or that such goods have been sponsored, approved, or

3  licensed by or associated with Vitalyte, or are in some way connected to or affiliated

4  with Vitalyte;

5          C.    doing or allowing any act or thing which is likely to injure

6  Vitalyte's business reputation or goodwill;

7          D.    engaging in any acts of federal, state or common law trademark

8  infringement, false designation of origin, or unfair competition that would damage

9  or injure Vitalyte; and

10          E.    participating or assisting in any of the above activities.

11      3.    For an order cancelling defendant Revitalyte's federal trademark

12  registration (Reg. No. 5,932,402) for the **REVITALYTE** mark.

13      4.    That Defendants, pursuant to 15 U.S.C. § 1116(a), be required to file

14  with the Court and to serve on Vitalyte within thirty (30) days after service of an

15  injunction order as requested herein, a report in writing under oath setting forth in

16  detail the manner and form in which they have complied with the Court's order.

17      5.    That an accounting be ordered of all of the profits realized by

18  Defendants from Defendants' unauthorized and infringing use of the

19  **REVITALYTE** mark.

20      6.    That Defendants be required to account for and pay Vitalyte all gains,

21  profits, and advantages derived from their acts of infringement and other unlawful

22  conduct, as alleged herein.

23      7.    That all gains, profits and advantages derived by Defendants from their

24  acts of infringement and other unlawful conduct alleged herein be deemed to be in

25  constructive trust for the benefit of Vitalyte.

26      8.    That judgment be entered against Defendants for Vitalyte's actual

27  damages as a result of Defendants' acts of infringement and other unlawful conduct

28

-13-

1  alleged herein, and for any additional profits attributable to Defendants' wrongful

2  conduct, according to proof.

3       9.      That Defendants' unlawful conduct as alleged herein be deemed a

4  willful violation of Vitalyte's intellectual property rights.

5       10.     That the Court declare this an exceptional case in light of Defendants'

6  malicious, fraudulent, deliberate, and/or willful conduct.

7       11.     That Vitalyte's actual damages be trebled pursuant to 15 U.S.C. §

8  1117(a).

9       12.     That Vitalyte recover its reasonable attorneys' fees pursuant to

10  15 U.S.C. § 1117(a).

11       13.     That Vitalyte recover the costs of this suit.

12       14.     That Vitalyte be granted pre-judgment and post-judgment interest on

13  the damages caused by Defendants.

14       15.     That Vitalyte be granted such other and further relief as the Court

15  deems just and proper.

16

17  Dated:  May 7, 2021

18                                     SHEPPARD, MULLIN, RICHTER & HAMPTON

19                                     LLP

20

21                                     By        /s/ Brian M. Daucher
                                       _____
22                                              BRIAN M. DAUCHER

23                                          Attorneys for Plaintiff
24                                     VITALYTE SPORTS NUTRITION INC.

25

26

27

28

-14-

1

**<u>DEMAND FOR JURY TRIAL</u>**

2       Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff

3  Vitalyte Sports Nutrition Inc. hereby demands a jury trial on all issues triable as of

4  right by a jury.

5

6  Dated:  May 7, 2021

7                                    SHEPPARD, MULLIN, RICHTER & HAMPTON

8                                    LLP

9

10                                   By          */s/ Brian M. Daucher*

11                                                   BRIAN M. DAUCHER

12                                              Attorneys for Plaintiff

13                                   VITALYTE SPORTS NUTRITION INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4820-8299-7479.1                     COMPLAINT FOR TRADEMARK INFRINGEMENT